IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RAFE DURAN DRUMMOND,  )
        Plaintiff,  )
   -vs-  )   Civil Action No. 18-903
NANCY A. BERRYHILL,  )
ACTING COMMISSIONER OF SOCIAL  )
SECURITY,  )
        Defendant.  )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Synopsis

Plaintiff Rafe Duran Drummond ("Drummond") seeks judicial review of the Social Security Administration's denial of his claim for supplemental security income ("SSI") and disability insurance benefits ("DIB").[1] Drummond alleges a disability onset date of August 1, 2013. (R. 13) The ALJ denied his claim following a hearing at which both Drummond and a vocational expert ("VE") appeared and testified. Drummond then appealed. Before the Court are the parties' cross-motions for summary judgment. *See* ECF Docket Nos. 12 and 15. For the reasons set forth below, the ALJ's decision is affirmed.

### Opinion

1. Standard of Review

---

[1] The ALJ determined that Drummond meets the insured status requirements of the Social Security Act through December 31, 2017. (R. 15)

1

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3)(7). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson,* 402 U.S. at 390, 91 S. Ct. 1420.

Importantly, a district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995

(1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." *Brunson v. Astrue*, 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

II. The ALJ's Decision

As stated above, the ALJ denied Drummond's claim for benefits. More specifically, at step one of the five step analysis, the ALJ found that Drummond had not engaged in substantial gainful activity since August 1, 2013, the alleged onset date. (R. 16) At step two, the ALJ concluded that Drummond suffers from the following severe impairments: type II diabetes mellitus; chronic pancreatitis; hypertension; asthma; obstructive sleep apnea; alcohol abuse; major depressive disorder; generalized anxiety disorder; panic disorder without agoraphobia; and unspecified intellectual disabilities. (R. 16-17) At step three, the ALJ concluded that Drummond does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17-19) Between steps three and four, the ALJ found that, considering the entire record, including the substance use disorder, Drummond has the residual functional capacity ("RFC") to perform light work with certain restrictions. (R. 19-22) At step four, the ALJ found that Drummond has no past relevant work. (R. 22) At the fifth step of the analysis, the ALJ concluded that, considering Drummond's age, education, work experience, and RFC

based on all of the impairments, including the substance use disorder, there are no jobs that exist in significant numbers in the national economy that he can perform. (R. 22-23)

The ALJ also considered how the analysis would proceed if Drummond stopped the substance abuse. He determined that the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities and, as such, he would continue to have a severe impairment or impairments; that he would not have an impairment or combination thereof that meet a Listing; that he would have the RFC to perform light work with certain exceptions; and that given the absence of past relevant work, considering Drummond's age, education,[2] work experience, and RFC, there would be a significant number of jobs in the national economy that he could perform. (R. 23-30) Consequently, the ALJ found that the substance use disorder is a contributing factor material to the determination of disability because Drummond would not be disabled if he stopped the substance use. (R. 30) As such, the ALJ concluded that Drummond was not under a disability during the relevant period of time. (R. 30)

III. Discussion

(1) Severe Impairments

Drummond contends that the ALJ erred in failing to consider the degenerative condition in his left shoulder and the osteoarthritis in his right knee to be "severe impairments." *See* ECF Docket No. 13, p. 3. The ALJ evaluated Drummond's claims in

---

[2] Drummond asserts, in a footnote, that although he had an 11th grade limited education with the ability to communicate in English, and had obtained a driver's license, the ALJ erred in assuming that he was literate. *See* ECF Docket No. 13, p. 1, n. 2. Drummond urges that many people who drive are illiterate and that, if the ALJ contested his claim of illiteracy, he "should have had the Plaintiff clinically tested by ordering an I.Q. test." *Id*. Yet the ALJ discounted mental health records indicating that Drummond had intellectual deficits that interfered with work. (R. 28) Specifically, the ALJ pointed to findings that Drummond's "thought process has been reported to be logical, linear, goal-directed, focused and future oriented, with no evidence of any disorganization, tangentiality or circumstantiality." (R. 28, citing, 767) As set forth elsewhere in this decision I find that substantial evidence supports the ALJ's decision in this regard. Consequently, I reject Drummond's contention.

this respect but rejected them because the conditions did not last for more than 12 months. (R. 16) Substantial evidence supports the ALJ's conclusion in this regard. X-rays revealed moderate arthritis but no fracture and an examination indicated level shoulders, normal lumbar lordosis and curvature. (R. 16) Further, although an x-ray of the knee showed some effusion and Drummond walked with an antalgic gait, the remainder of the knee exam was normal, and there is no indication that Drummond received any care following an injection to the knee. (R. 16) In short, Drummond has not identified *any* evidence indicating that he continued to receive treatment to his shoulder and / or knee beyond the 12-month period. Consequently, I find no basis for remand on this issue.

Additionally, even accepting Drummond's position as correct for purposes of argument, such error was harmless because the ALJ found that Drummond suffered from several other impairments which did qualify as "severe." In other words, the ALJ did not end the analysis at the second step. *See Salles v. Commissioner of Soc. Sec.*, 229 Fed. Appx. 140, 145 n. 2 (3d Cir. 2007) (stating that, "[b]ecause the ALJ found in Salle's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless."), *citing, Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). *See also, Roberts v. Astrue*, Civ. No. 8-625, 2009 U.S. Dist. LEXIS 91559, at * 5 (W.D. Pa. Sept. 30, 2009) (finding that, [e]ven assuming that the ALJ failed to include all of the Plaintiff's severe impairments at step two, this would be harmless error, as the ALJ did not make his disability determination at this step. Indeed, remand would not affect the outcome of this case and is not warranted."); and *Bliss v. Astrue*, Civ. No. 8-980, 2009 WL 413757 (W.D. Pa. Feb. 18, 2009) (stating

that, "as long as a claim is not denied at step two, it is not generally necessary for the ALJ to have specifically found any additional alleged impairments to be severe.... Since Plaintiff's claim was not denied at step two, it does not matter whether the ALJ correctly or incorrectly found Plaintiff's neuropathy and sleep apnea to be non-severe.") Accordingly, any alleged error was harmless and Drummond's contentions are rejected.

(2) Residual Functional Capacity

As stated above, the ALJ concluded that Drummond had the residual functional capacity to perform a range of light work with certain restrictions. In reaching this conclusion, the ALJ assessed and gave weight to the opinions of various medical professionals. Drummond urges that the RFC is deficient because of the ALJ's assessment of opinion proffered by his treating psychiatrist at Turtle Creek Valley Mental Health, Dr. Umapathy Channamalappa. *See* ECF Docket No. 13, p. 4. The amount of weight to be accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 404.1527(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.*, § 404.1527(c)(2). The opinion of a treating physician need not be viewed uncritically, however. Rather, only when an ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's]

6

impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," must he give that opinion controlling weight. *Id.* Unless a treating physician's opinion is given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient / physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. *Id.*, § 404.1527(c)(1)-(6). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." *Id.*, § 404.1527(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000), quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, "where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § [404.1527]([c])(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r. of Soc. Sec. Admin.*, 403 Fed. Appx. 679, 686 (3d Cir. 2010). The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." *See* 20 C.F.R. § 404.1527(d)(1), (3); *Dixon v. Comm'r. of Soc. Sec.*, 183 Fed. Appx. 248, 251-

7

52 (3d Cir. 2006) ("[O]pinions on disability are not medical opinions and are not given any special significance.").

Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r. of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation of his final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r. of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008).

Here, Drummond contends that if the ALJ had properly considered the limitations set forth in the Medical Assessment of Ability to do Work-Related Activities (Mental) (R. 931), authored by Channamalappa, he would have been awarded benefits. After careful consideration, I find that the ALJ provided sufficient explanation for discounting the opinion and that the decision to do so is supported by substantial evidence of record. For instance, the ALJ discounted Channamalappa's opinion because of a lack of knowledge of Drummond's extensive history of alcohol abuse and because Drummond had not been forthcoming about his hospitalizations for alcohol abuse. (R. 27) Substantial evidence of record supports the ALJ's finding that Drummond did not disclose to Channamalappa any of his hospitalizations for alcohol abuse. (R. 766) Indeed, as the ALJ noted, Drummond had not been honest with caregivers in the past about his alcohol abuse. (R. 20, recounting Drummond's repeated hospitalizations for pancreatitis / abdominal pain related to acute intoxication, despite representing that he

had not had a drink in the past year, including an instance when Drummond represented that he was hospitalized for constipation rather than for intoxication) In fact, the ALJ documents in detail Drummond's history of hospitalizations and his lack of candor concerning his drinking both to Channamalappa and to other medical providers. (R. 20-22). The ALJ also discounted Channamalappa's diagnoses of "cutting disorder" due to an absence of evidence justifying the diagnoses. (R. 27) Drummond does not offer any objection to the ALJ's conclusion in this regard. Finally, the ALJ gave no weight to Channamalappa's diagnoses of schizoaffective disorder because he found them to be based on Drummond's subjective reports and at odds with Channamalappa's own notes. (R. 27-28) Drummond's brief is silent as to this issue. Further, as the ALJ indicated, this finding is at odds with Channamalappa's own examination with indicates that Drummond did not suffer from illusions or hallucinations and "did not appear to be responding to internal stimuli to suggest any auditory or visual hallucinations." (R. 767) The ALJ also found Channamalappa's finding that Drummond suffered from intellectual deficits was at odds with how Drummond interacted at the hearing as well as his ability to pass a driver's license test. (R. 28) These are appropriate bases for discounting an opinion and, as such, remand on this issue is not required.

(3) Hypothetical Questions

Finally, Drummond faults the ALJ for failing to incorporate psychiatric limitations as well as those regarding his knee and shoulder into the hypothetical questions posed to the vocational expert. I find no error with the hypotheticals as posed. As set forth above, the ALJ's formulation of the RFC, and the discounting of expert testimony regarding his

psychiatric and physical impairments is supported by substantial evidence of record. It is well-settled that the law only requires the ALJ to include in hypotheticals posed to vocational experts those limitations which are supported by the record. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) and *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). The RFC adequately reflects Drummond's limitations. The ALJ posed a question to the VE which accurately encompassed Drummond's limitations and the VE responded that there existed jobs in significant numbers in within the national economy that Drummond could perform. As such, the hypothetical questions do not pose a basis for remand.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAFE DURAN DRUMMOND )<br>    Plaintiff, )<br> )<br> -vs- )<br> )<br>NANCY A. BERRYHILL, )<br>ACTING COMMISSIONER OF SOCIAL )<br>SECURITY, )<br> )<br>    Defendant. ) | | Civil Action No. 18-903 |

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this June 17, 2019, it is hereby ORDERED that the Plaintiff's Motion for Summary Judgment (Docket No. 12) is DENIED and the Defendant's Motion for Summary Judgment (Docket No. 15) is GRANTED. It is further ORDERED that the ALJ's decision is AFFIRMED. This case shall be marked "Closed" forthwith.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
United States Senior District Judge